## GENERAL TIME INSTRUMENTS CORPORATION v. NEW HAVEN CLOCK CO.

District Court, S. D. New York.
July 27, 1942.

Pennie, Davis, Marvin & Edmonds, of New York City (W. Brown Morton and H. Stanley Mansfield, both of New York City, and Herbert H. Hulse, of La Salle, Ill., of counsel), for plaintiff.

Willis B. Rice, of New York City (Willis B. Rice and Lawrence Bristol, both of New York City, of counsel), for defendant.

COXE, District Judge.

This is a suit for a declaratory judgment that the Whitehead and Porter patent No. 1,907,919, issued May 9, 1933, for a synchronous clock having means for storing and releasing energy, owned by the defendant, is invalid and not infringed. The defendant in its answer has set up a counterclaim alleging infringement of the patent by the plaintiff, and asking the usual relief of injunction and accounting. The parties are well known clock makers engaged in the manufacture and sale of various types of clocks.

The patent discloses an electrical clock having means for sounding an audible signal, such as an alarm, strike or chime, operated by the same synchronous motor which drives the hands. The principal object stated is "to provide a clock in which the timing element has a motor of the synchronous type with means for storing energy from the motor, adapted to be intermittently released without interfering with the time keeping qualities of the motor". The timing element of the clock has the usual gear train. The signal mechanism is driven by a spring which is wound through a gear connection with the electric motor. The particular type of spring employed is a slip spring to prevent overwinding and stalling of the motor. In the specification, it is stated that "the continuous running of the clockworks applies a slow and continuous winding effort to the spring 32 whereby energy is gradually transmitted and stored without overloading the motor; the spring slipping after a predetermined amount has been stored".

The patent has four claims, and all are in issue. Claim 2 is fairly typical of the others, and reads as follows: "2. In a clock mechanism of the character described, in combination, a synchronous motor, a time train synchronously driven, by said synchronous motor, a clock signal train, connections between said motor and said signal train to drive the latter from the former including an energy storing device for accumulating energy

during the periods of rest of the signal train to furnish the energy for the operation of the signal train to permit the signal train to operate or rest while the time train is driven by said motor without altering the speed of said motor and restraining means releasable by said time train, for restraining the operation of said signal train".

The only contested issue concerns the validity of the claims; it is conceded by the plaintiff that if the claims are valid, they have been infringed.

The earliest recorded instance of the running of clocks by synchronous motors was in Cologne in 1896. The motors there were not self-starting, but required some manual effort to throw them into synchronism; after they were started, they locked into step with the power generators and ran at synchronous speed with sufficient energy to drive the gear train of the clock. In this country, one of the pioneers in the field was Henry W. Warren, who has become known as the father of the electrical clock industry. Warren was the founder of the Warren Telechron Company, which was actually on the market with self-starting synchronous electric clocks about 1917 or 1918 or 1919. These clocks were, however, time clocks without strike, chime or alarm.

With the plaintiff and the defendant, the alarm clock field has for some time been the principal part of the business, and it still accounts for the bulk of the sales. Prior to 1929, these two companies made their alarm clocks with the conventional springs, which were hand wound. In 1929, the Warren Company brought out a synchronous electric clock with a buzzer alarm. This clock utilized the magnetic flux from the coil of the motor to provide the energy for operating the alarm; it at once became a large seller, and offered a challenge to the plaintiff and the defendant to produce something better with which to meet impending competition.

The principal difficulty encountered by the plaintiff and the defendant in designing their present electric alarm clocks was to obtain inexpensive self-starting synchronous motors of sufficient torque which could be operated from an alternating current lighting and power circuit. These motors are specially designed with small input and low efficiency, and are procured by both companies from representative electrical concerns. The design of the motor is not, however, involved in any of the claims of the patent.

When the defendant was able to obtain the necessary self-starting synchronous motors, it was not a difficult matter to add the conventional time train to drive the hands. Moreover, it was old to use the same synchronous motor both to drive the hands and to wind the spring motor. The main problem, however, was to provide means for storing energy from the motor, which could be intermittently released to operate the alarm without stalling the motor. This was done by Whitehead and Porter by using a slip spring with the conventional alarm mechanism.

The defendant made its first announcement of its new electric alarm clock early in 1930, and by the fall of that year the clocks were being produced and sold in substantial quantities. Since that time, the electric alarm clocks have been an important part of the defendant's business.

■ The question then is whether it constituted invention to use a slip spring in the particular combination of the patent. The defendant concedes that slip springs are old in the clock art, and the references show their use in a number of prior patents, notably in the Groux patent No. 377,935, involving a spring wound clock; the Campiche British patent No. 17,779 involving a secondary electric clock; and the Warren patent No. 1,564,803, involving a synchronous motor clock. The same general type of spring is also shown in the Warren Master Clock, which follows the teaching of the Warren patent. This Warren patent discloses a clock mechanism, in which the conventional clock spring is wound by a synchronous motor acting through a slipping clutch, the purpose being "to supplement the electric motor which operates the clock by another motor for keeping the clock in normal operation should the electric distribution fail". In view of this showing of the prior art, I do not think that it constituted invention to use a slip spring to prevent overwinding of the spring and stalling of the motor. Undoubtedly, it required ingenuity to produce the electric alarm clock of the patent, but ingenuity is not invention. Cuno Engineering Corp. v. Automatic Devices Corp., 314 U.S. 84, 62 S.Ct. 37, 86 L.Ed. ——. I think, there-

fore, that the claims are invalid for lack of invention.

In view of this disposition, it is unnecessary to consider the evidence relating to the alleged Chelsea Clock and Western Clock uses asserted by the plaintiff. It will be sufficient for the present purpose merely to say that neither of these alleged uses has been established.

There may be a judgment for the plaintiff declaring Claims 1, 2, 3 and 4 of the Whitehead and Porter patent No. 1,907,-919 invalid for lack of invention.